UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                )
                                      )
HAYMARKET TRANSPORTATION, INC.        )    Case No. 09-20389-SSM
                                      )    Chapter 11
        Debtor                        )

**MEMORANDUM OPINION**

Before the court is the debtor's objection to Claim No. 7 filed by Alessandra Palombella as a priority claim for unpaid commissions in the amount of $8,207.66. An evidentiary hearing was held on February 25, 2011, at which the debtor appeared by counsel and the creditor appeared in person and represented herself. For the reasons stated, the claim will be allowed in large part, but as a general unsecured claim, not a priority claim

Background

Haymarket Transportation, Inc. ("HTI"), filed a voluntary petition in this court on December 22, 2009, for reorganization under chapter 11 of the Bankruptcy Code. It continues in operation of its business as a debtor in possession. A plan has not yet been confirmed.

Alessandra Palombella was hired by HTI in April 2008 and worked for the company until mid-December of that year. HTI was the "preferred transportation provider" at the Westfields Marriott Conference Center, Chantilly, Virginia, and maintained a desk there that operated from 7:00 a.m. to 11 p.m., seven days per week at which hotel guests could book shuttle transportation to and from the airport and tourist attractions. Ms. Palombella's duties included manning that desk and responding to telephone and email inquiries, although her primary responsibility was to

1

solicit transportation and tour business from groups that had booked conventions and meetings at the hotel. When initially hired, her compensation was $40,000 per year plus a 20% commission on business that she generated. After she was diagnosed with cancer, however, the owner of the company, George Mouratides, reduced her on-site schedule to 2 days per week. Shortly thereafter, he provided her with a company laptop and instructed her to work from home on a two-day per week basis. Her fixed compensation was changed to $153 per day, but her commission arrangement remained unchanged. The precise contours of that arrangement, however, are disputed. Unfortunately, there is no written employment agreement or other writing memorializing the compensation arrangement. Ms. Palombella testified that Mouratides told her she would receive a commission on all transportation she booked, while Mouratides and Seble Sayoum, Haymarket's manager of sales and operations, testified that she was to receive a commission only on business she generated, meaning that a commission would not be paid either on routine transportation (such as shuttles to and from the airport) booked by hotel guests contacting HTI's desk at the hotel or on event transportation for groups that had used HTI in the past.

For the months of September through November 2008, Ms. Palombella was paid $3,384.48 as her fixed compensation. Based on her understanding of the commission arrangement, Ms. Palombella asserts that she is also entitled to unpaid commissions for September 2008 through January 2009 in the total amount of $8,207.66 based on gross sales she booked of $46,179.80. (The commission claim is somewhat less than 20% of the gross bookings, since many of them were billed through the hotel, which received 10%, and the commission was calculated on the net to HTI.). In support of her claim, she provided a detailed

2

accounting, with supporting copies of the documents and email communications, for each of the bookings for which she asserted entitlement to a commission. As further support for her understanding of the commission arrangement, she provided evidence that HTI had paid her a commission on all bookings for July and August that had been placed through her. Ms. Seyoum did not explain why HTI had paid Ms. Palombella the full commission she had claimed for those months. She did testify, however, that some of the later bookings were matters that she, not Ms. Palombella, worked on. She also testified that some (specifically a Kuwaiti group) were matters that Ms. Palombella had begun but that Ms. Seyoum and others had to finish. Finally, she testified that at least three of the groups (General Dynamics, ExxonMobil, and Gates Scholarships) were existing customers. Ms. Seyoum conceded that Ms. Palombella was owed some commission, but (without providing a detailed accounting) asserted it was closer to $2,600 than the amount claimed.

For reasons that are not clear, Ms. Palombella did not submit an invoice for the commissions she believed she was due for September 2008 until December 7th. Mouratides replied to her on December 17, 2008, stating:

> I just went through your commission list I have done the best I can do to pay according what I thought is fair and right. I will make sure you get your check this Friday according to my calculation. Beside that business is really bad when Sam returns the lab tap [*sic*] I am going to keep it. If you are still available we will talk around March with different condition and agreement thank you for all your help I just can't afford to keep you around. I did the best I could to work with you assuming your condition. The company is loosing [*sic*] losts of money at this point. Not good!

Two days later, Ms. Palombella sent Mouratides a statement for the January 2009 commissions she believed she was owed, explaining, "I expect to be paid for this work when Exxon pays for

3

this event. I have been working with Nancy on this since June/08 and I booked these events on December 1st." Mouratides replied the same day:

> I am sorry about this but I cannot pay you full amount with this account come February we will discuss again pending of how much work we have to do. I hope you understand things are not looking good at all.

And a few minutes later, Mouratides followed up with a further email:

> As we speak I am struggling to pay you for the past work. Melissa at Westfields so far has rejected about $10,000 payment in the past 5 months invoices.

Notwithstanding Mouratides's assurance in the December 17th email that he would "make sure you get your check this Friday according to my calculation," HTI did not pay Ms. Palombella any commissions for September, nor did it provide her with a calculation of what it believed she was owed.

<u>Discussion</u>

I.

In a bankruptcy case, a filed proof of claim is allowed unless a party in interest objects. § 502(a), Bankruptcy Code. Among the grounds for disallowance—and the only one that is relevant here—is that the claim "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." § 502(b)(1), Bankruptcy Code. A properly filed proof of claim is prima facie evidence of the validity and amount of the claim. Fed.R.Bankr.P. 3001(f). As a result, the party objecting to a claim has the initial burden of presenting sufficient probative evidence to overcome the prima facie effect of the filed proof of claim. *In re C-4 Media Cable South, L.P.*, 150 B.R. 374, 377 (Bankr. E.D. Va. 1992). Once it has done so, the ultimate burden of proof rests on the party who would have that burden under nonbankruptcy law. *Raleigh v. Ill. Dep't of*

*Revenue*, 530 U.S. 15, 120 S.Ct 1951, 147 L. Ed. 2d 13 (2000).  Here, there is no dispute that Ms. Palombella, as the party asserting a claim for breach of contract, would have that burden under state law, and she likewise has it here.  The standard of proof is preponderance of the evidence.

II.

The dispute boils down to whether Ms. Palombella was entitled to a commission on all bookings made through her (including airport shuttles and returning customers) or only on business that she had solicited.  Ms. Palombella's testimony that Mouratides had agreed to a commission on all bookings is supported by the course of dealing between the parties prior to submission of the September commission list.  HTI's email response did not dispute Ms. Palombella's legal entitlement to the commissions she claimed but instead focused on the company's financial difficulties.  At the same time, HTI's position that a commission was intended to be paid only on business Ms. Palombella had solicited and that the fixed compensation was intended to cover routine airport shuttle requests and other transportation requests placed through the hotel for which she was simply an intermediary makes sense.  Put another way, logic suggests that the fixed component of the compensation arrangement must have covered something other than mere presence on the job site.  The fact that in the past HTI had paid Ms. Palombella a commission on all bookings (including bookings of the type it now disputes) can be explained by simple inattention to detail while business was good and the motivation for closer scrutiny after the company's financial condition deteriorated.

In any event, after considering all the evidence, the court is persuaded that the fixed compensation was intended to cover airport shuttles and other routine bookings, such as the two

5

golf-course shuttle trips in September (B&CMA on September 14th and Syncom on September 16), and to that extent the court sustains the debtor's objection. The court is not persuaded, however, that a commission was not to be paid simply because a particular group had used HTI for transportation needs (other than airport shuttle service) in prior years, and to that extent the court finds for Ms. Palombella. With respect to the Kuwait Group transportation in December 2008, the supporting emails supplied by Ms. Palombella adequately reflect her active involvement in procuring the business. Although other persons may have worked on finalizing the details, the debtor offered no documents to show the extent of their involvement, and Ms. Seyoum's testimony lacked sufficient detail to support any reduction in the commission that would otherwise have been due. The January 2009 ExxonMobil bookings of course present the issue that by then Ms. Palombella was no longer working for HTI, since Mouratides had told her he could no longer afford to employ her. However, the supporting emails reflect that the business had been solicited, and the terms had been fully negotiated, prior to the time HTI let her go. Accordingly, the court finds that Ms. Palombella is entitled to a commission on those bookings.

Attached to this opinion is an itemization of those bookings for which the court finds an entitlement to a commission and those for which it does not. Based on those findings, as summarized in the exhibt, the court determines that Ms. Palombella is entitled to commissions in the total amount of $6,880.65.[1]

---

[1] Because Ms. Palombella is *pro se*, the court does point out that *allowance* of a claim does not necessarily mean that it will be *paid* in that amount. The treatment of an allowed claim is defined by the terms of a plan, if one is confirmed. If a plan is not confirmed and the case is converted to chapter 7, the amount paid will depend on the assets available at that time for the payment of claims.

III.

Although not raised by the objection, one additional point requires comment. The proof of claim asserts priority under § 507(a)(4)(B) of the Bankruptcy Code. The cited provision accords fourth-level priority to:

> allowed unsecured claims, but only to the extent of $11,725 for each individual or corporation, as the case may be, *earned within 180 days before the date of the filing of the petition* or the date of the cessation of the debtor's business, whichever occurs first, for—
>     (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or
>     (B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor.

§ 507(a)(4), Bankruptcy Code (emphasis added). By its plain terms, only those unpaid wages, salaries, or commissions "earned *within 180 days before the date of the filing of the petition* or the date of the cessation of the debtor's business, whichever occurs first" are entitled to priority. *Id.* The petition commencing the debtor's case was filed on December 22, 2009. One hundred eighty days before that date was June 25, 2009. All the commissions at issue were earned no later than January 28, 2009. Thus, no part of the allowed claim is entitled to priority. It is important to note that the 180-day priority period applies to *both* subsections (A) and (B)—the 12-month measuring period referred to in subsection (B) merely determines whether an independent contractor is sufficiently similar to an employee to qualify for the wage priority. Accordingly, even if Ms. Palombella were characterized as an independent contractor for the period in question, the unpaid commissions would not constitute a priority claim.

## Conclusion

For the foregoing reasons, the court will allow Ms. Palombella's claim as a general unsecured claim in the amount of $6,880.56. A separate order will be entered consistent with this opinion.

Date: _____          _____
                                                                                  Stephen S. Mitchell
Alexandria, Virginia                                              United States Bankruptcy Judge


Copies to:

Bennett A. Brown, Esquire
3905 Railroad Avenue, Suite 200N
Fairfax, VA  22030
Counsel for the debtor in possession

Alessandra Palombella
14707 Hanna Court
Centreville, VA 20121
Creditor

Haymarket Transportation, Inc.
45580 Shepard Drive
Suite 13
Sterling, VA 20164
Debtor in possession


Jack Frankel, Esquire
Office of the United States Trustee
115 South Union St., Suite 210
Alexandria, VA  22314

|  | Description | Charge | Hotel 10% | HTI net | Commission Claimed | Commission Allowed |
|---|---|---|---|---|---|---|
| **Sep-08** | | | | | | |
| 01-Sep | IMD | $886.00 | $88.60 | $797.40 | $159.48 | $159.48 √ |
| 02-Sep | IMD | $2,364.00 | $236.40 | $2,127.60 | $425.52 | $425.52 √ |
| 03-Sep | IMD | $3,904.00 | $390.40 | $3,513.60 | $702.72 | $702.72 √ |
| 04-Sep | IMD | $931.00 | $93.10 | $837.90 | $167.58 | $167.58 √ |
| 05-Sep | IMD | $1,375.00 | $137.50 | $1,237.50 | $247.50 | $247.50 √ |
| 11-Sep | Chauncey | $155.00 | $15.50 | $139.50 | $27.90 | |
| 12-Sep | Asbury | $120.00 | $12.00 | $108.00 | $21.60 | |
| 14-Sep | B&CMA | $800.00 | $80.00 | $720.00 | $144.00 | |
| 15-Sep | Am Biscuit | $510.00 | $51.00 | $459.00 | $91.80 | $91.80 √ |
| 15-Sep | Crum | $235.75 | $23.58 | $212.18 | $42.44 | |
| 16-Sep | Syncom | $765.00 | $76.50 | $688.50 | $137.70 | |
| 16-Sep | ITT | $425.00 | $42.50 | $382.50 | $76.50 | $76.50 √ |
| 16-Sep | Asbury | $25.00 | $2.50 | $22.50 | $4.50 | |
| 17-Sep | BOG | $180.00 | $18.00 | $162.00 | $32.40 | |
| 17-Sep | Sonnenschein | $1,932.00 | $193.20 | $1,738.80 | $347.76 | $347.76 √ |
| 17-Sep | Media Law | $300.00 | $30.00 | $270.00 | $54.00 | $54.00 √ |
| 17-Sep | Clendenon | $125.00 | $12.50 | $112.50 | $22.50 | |
| 17-Sep | ITT | $235.75 | $23.58 | $212.18 | $42.44 | |
| 18-Sep | Klenk | $125.00 | $12.50 | $112.50 | $22.50 | |
| 18-Sep | BOG | $60.00 | $6.00 | $54.00 | $10.80 | |
| 19-Sep | CCM | $75.00 | $7.50 | $67.50 | $13.50 | |
| 19-Sep | Door&Hardware | $450.00 | $45.00 | $405.00 | $81.00 | $81.00 √ |
| 20-Sep | Door&Hardware | $225.00 | $22.50 | $202.50 | $40.50 | |
| 25-Sep | Eastern Criminal | $150.00 | | $150.00 | $30.00 | |
| 25-Sep | Renewable Fuels | $64.00 | $6.40 | $57.60 | $11.52 | |
| 26-Sep | Gates Millenium | $3,030.00 | $303.00 | $2,727.00 | $545.40 | |
| 28-Sep | Gates Millenium | $60.00 | $6.00 | $54.00 | $10.80 | |
| 29-Sep | Elliott | $75.00 | $7.50 | $67.50 | $13.50 | |
| 29-Sep | Meridian | $30.00 | $3.00 | $27.00 | $5.40 | |
| 30-Sep | ProDealers | $30.00 | $3.00 | $27.00 | $5.40 | |
| Sep Totals | | $19,642.50 | | $17,693.25 | $3,538.65 | $2,353.86 |
| **Oct-08** | | | | | | |
| 01-Oct | Elliott Group | $60.00 | $6.00 | $54.00 | $10.80 | |
| 01-Oct | ProDealers | $30.00 | $3.00 | $27.00 | $5.40 | |
| 01-Oct | Meridian | $15.00 | $1.50 | $13.50 | $2.70 | |
| 02-Oct | ProDealers | $50.00 | $5.00 | $45.00 | $9.00 | $9.00 √ |
| 03-Oct | ProDealers | $15.00 | $1.50 | $13.50 | $2.70 | |
| 08-Oct | Northrop | $240.00 | $24.00 | $216.00 | $43.20 | $43.20 √ |
| 10-Oct | Life Point | $30.00 | $3.00 | $27.00 | $5.40 | |
| 16-Oct | Guseman | $660.00 | $66.00 | $594.00 | $118.80 | $118.80 √ |
| 18-Oct | Guseman | $1,430.00 | $143.00 | $1,287.00 | $257.40 | $257.40 √ |
| 18-Oct | Guseman | $210.00 | $21.00 | $189.00 | $37.80 | $37.80 √ |
| 18-Oct | US Soccer | $720.00 | $72.00 | $648.00 | $129.60 | |
| 19-Oct | Guseman | $660.00 | $66.00 | $594.00 | $118.80 | $118.80 √ |
| 22-Oct | DiFrisco | $65.00 | $6.50 | $58.50 | $11.70 | |
| 25-Oct | Miller | $1,080.00 | $108.00 | $972.00 | $194.40 | $194.40 √ |
| 27-Oct | FAF | $900.00 | $90.00 | $810.00 | $162.00 | $162.00 √ |

|  | Description | Charge | Hotel 10% | HTI net | Commission Claimed | Allowed |
|---|---|---|---|---|---|---|
| 27-Oct | Byrne | $300.00 | $30.00 | $270.00 | $54.00 | |
| 29-Oct | Rader | $50.00 | $5.00 | $45.00 | $9.00 | |
| 29-Oct | Ferrauiloa | $60.00 | $6.00 | $54.00 | $10.80 | |
| 29-Oct | Building Bridges | $30.00 | $3.00 | $27.00 | $5.40 | |
| 30-Oct | Bujilding Bridges | $75.00 | $7.50 | $67.50 | $13.50 | |
| 31-Oct | Building Bridges | $45.00 | $4.50 | $40.50 | $8.10 | |
| Oct Totals | | $6,725.00 | | $6,052.50 | $1,210.50 | $941.40 |
| **Nov-08** | | | | | | |
| 01-Nov | Building Bridges | $135.00 | $13.50 | $121.50 | $24.30 | |
| 08-Nov | Hold | $150.00 | $15.00 | $135.00 | $27.00 | |
| 11-Nov | UPPCC | $180.00 | $18.00 | $162.00 | $32.40 | |
| 14-Nov | CSM | $720.00 | $72.00 | $648.00 | $129.60 | $129.60 √ |
| 15-Nov | Gen Dynamics | $1,524.00 | $152.40 | $1,371.60 | $274.32 | $274.32 √ |
| 18-Nov | Kuwait | $750.00 | | $750.00 | $150.00 | $150.00 √ |
| 19-Nov | Kuwait | $990.00 | | $990.00 | $198.00 | $198.00 √ |
| 20-Nov | Gen Dynamics | $1,584.00 | $158.40 | $1,425.60 | $285.12 | $285.12 √ |
| 20-Nov | Kuwait | $1,290.00 | | $1,290.00 | $258.00 | $258.00 √ |
| 21-Nov | Kuwait | $1,470.00 | | $1,470.00 | $294.00 | $294.00 √ |
| 21-Nov | L3 | $540.00 | $54.00 | $486.00 | $97.20 | |
| 24-Nov | Kuwait | $1,020.00 | | $1,020.00 | $204.00 | $204.00 √ |
| 30-Nov | Kuwait | $408.00 | | $408.00 | $81.60 | $81.60 √ |
| Nov Totals | | $10,761.00 | | $10,277.70 | $2,055.54 | $1,874.64 |
| **Dec-08** | | | | | | |
| 01-Dec | Kuwait | $1,123.50 | | $1,123.50 | $224.70 | $224.70 √ |
| 02-Dec | Kuwait | $943.50 | | $943.50 | $188.70 | $188.70 √ |
| 03-Dec | Kuwait | $943.50 | | $943.50 | $188.70 | $188.70 √ |
| 04-Dec | Kuwait | $561.00 | | $561.00 | $112.20 | $112.20 √ |
| 05-Dec | Kuwait | $331.50 | | $331.50 | $66.30 | $66.30 √ |
| 06-Dec | Kuwait | $168.30 | | $168.30 | $33.66 | $33.66 √ |
| Dec Totals | | $4,071.30 | | $4,071.30 | $814.26 | $814.26 |
| **Jan-09** | | | | | | |
| 27-Jan | ExxonMobil | $3,930.00 | $393.00 | $3,537.00 | $707.40 | $707.40 √ |
| 28-Jan | ExxonMobil | $1,050.00 | $105.00 | $945.00 | $189.00 | $189.00 √ |
| Jan Totals | | $4,980.00 | | $4,482.00 | $896.40 | $896.40 |

**Summary**

| | | |
|---|---|---|
| Sep-08 | $17,693.25 | $2,353.86 |
| Oct-08 | $6,052.50 | $941.40 |
| Nov-08 | $10,277.70 | $1,874.64 |
| Dec-08 | $4,071.30 | $814.26 |
| Jan-09 | $4,482.00 | $896.40 |
| Total Allowed Claim | $42,576.75 | $6,880.56 |